1  **Mark S. Bagula, Esq. (SBN 171141)**
2  **Rada Feldman, Esq. (SBN 285931)**
   **OLINS RIVIERE COATES AND BAGULA, LLP**
3  2214 Second Avenue
   San Diego, CA 92101
4  Tel:  (619) 272-4235
   Fax:  (619) 272-4309

5  Attorneys for Plaintiff, WILLIAM GUTIERREZ

6

7

8                **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10  WILLIAM GUTIERREZ,              ) CASE NO.:  **'15CV2825 BEN RBB**
                                    )
11            Plaintiff,            ) **COMPLAINT FOR DAMAGES AND**
                                    ) **INJUNCTIVE RELIEF FOR**
12  v.                             ) **VIOLATION OF THE FAMILY AND**
                                    ) **MEDICAL LEAVE ACT AND THE**
13  UNITED TECHNOLOGIES             ) **CALIFORNIA LABOR CODE,**
    CORPORATION; GOODRICH           )
14  CORPORATION; UTC                )
    AEROSPACE SYSTEMS; and          ) **JURY TRIAL DEMANDED**
15  HAMILTON SUNDSTRAND, and        )
    DOES 1 through 25, inclusive,   )
16                                  )
              Defendants.           )
17  _____)

18

19  Plaintiff William Gutierrez alleges:

20                     **PARTIES**

21       1.    Plaintiff is a resident of the County of San Diego, State of California.

22       2.    Plaintiff is informed and believes, and upon that basis alleges, defendant

23  United Technologies Corporation ("United Technologies") is a corporation

24  incorporated in Delaware with its business headquarters in Hartford, Connecticut.

25  Defendant United Technologies provides high-technology products and services to

26  the building systems and aerospace industries worldwide and operates through six

27  business segments. On or about July 26, 2012, defendant United Technologies

28  acquired defendant Goodrich Corporation ("Goodrich") pursuant to a merger

                              **1**
          **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

agreement dated September 21, 2011. As a result of the acquisition, defendant Goodrich became a wholly-owned subsidiary of defendant United Technologies. Following the completion of the acquisition, in 2012, defendant United Technologies combined its Hamilton Sundstrand unit with Goodrich to form a new segment named UTC Aerospace Systems.

3.     Plaintiff is informed and believes, and upon that basis alleges, defendant UTC Aerospace Systems ("UTAS"), formerly Goodrich and Hamilton Sundstrand, is a corporation doing business in this district and unit and subsidiary of defendant United Technologies (NYSE: UTX), with its corporate headquarters in Charlotte, North Carolina, and with its Aerostructures business unit headquarters in Chula Vista, California. Defendant UTAS is one of the world's largest suppliers of technologically advanced aerospace and defense products.

4.     Plaintiff is informed and believes, and upon that basis alleges, defendant Hamilton Sundstrand ("Hamilton Sundstrand") is a corporation with its business headquarters in Farmington, Connecticut.

5.     Plaintiff is informed and believes, and upon that basis alleges, defendant Goodrich is a corporation with its business headquarters in Farmington, Connecticut.

6.     At all material times herein, plaintiff was an employee of defendants United Technologies Corporation, UTC Aerospace Systems, and Goodrich Corporation, and Hamilton Sundstrand (collectively, "Goodrich/UTC" or "defendants") at the Chula Vista, California location in the Aerostructures Group. On or about June 16, 1986, plaintiff was hired by defendant UTAS' predecessor Goodrich and worked in its Aerostructures Group as an Assembler, Tube Bender and then Development Technician. Following defendant United Technologies' acquisition of Goodrich on or about July 2012 and Goodrich's subsequent merger with Hamilton Sundstrand to form defendant UTAS, on or about 2012 and through plaintiff's termination on or about March 11, 2014, plaintiff was an employee of defendant UTAS in its Aerostructures Group as a Development Technician.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

7.      Ken Lung ("Lung"), is, and at all times herein mentioned was, plaintiff's Supervisor/Team Leader at the Chula Vista, California business headquarters from on or about February 2014 through plaintiff's termination. At all times herein mentioned Lung was the agent and employee of defendant UTAS and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment. Earl Glover ("Glover"), is, and at all times herein mentioned was, plaintiff's Supervisor at the Chula Vista, California business headquarters on or about June 2012 through plaintiff's transfer to a new supervisor. At all times herein mentioned Glover was the agent and employee of defendant UTAS and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

8.      Jim Beckstrom ("Beckstrom"), is, and at all times herein mentioned was, plaintiff's Manager at the Chula Vista, California business headquarters from on or about February 2014 through plaintiff's termination. At all times herein mentioned Beckstrom was the agent and employee of defendant UTAS and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

9.      Nevia Anderson ("Anderson"), is, and at all times herein mentioned was, the Human Resources Manager for defendant UTAS at the Chula Vista, California business headquarters. At all times herein mentioned Anderson was the agent and employee of defendant UTAS and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

10.     Laura Arnie ("Arnie"), is, and at all times herein mentioned was, the Human Resources Personnel Control for defendant UTAS at the Chula Vista, California business headquarters. At all times herein mentioned Arnie was the agent and employee of defendant UTAS and, in doing the things hereinafter alleged, was acting within the course and scope of such agency and employment.

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

11.     There exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendant United Technologies and defendant UTAS, such that any individuality and separateness between defendant United Technologies and defendant UTAS have ceased, and defendant UTAS is the alter ego of defendant United Technologies in that defendant UTAS is the agent of defendant United Technologies and defendant United Technologies controlled and dominated the business affairs of defendant UTAS.   Adherence to the fiction of the separate existence of the defendant United Technologies as an entity distinct from defendant UTAS would permit an abuse of the limited liability company privilege and would sanction fraud or promote injustice. At all relevant times herein mentioned, defendant United Technologies' leadership structure includes executive officers of defendant UTAS and also former executive officers of defendants Goodrich and Hamilton Sundstrand. Defendant United Technologies' Form 10-k, Annual Report Pursuant To Section 13 or 15(D) of the Securities Exchange Act of 1934, filed for all relevant times herein, provides that: "All of the officers serve at the pleasure of the Board of Directors of United Technologies Corporation or the subsidiary designated."

12.     There exists, and at all times herein mentioned there existed, a unity of interest and ownership between defendants Goodrich Corporation and Hamilton Sundstrand and defendant UTC Aerospace Systems, such that any individuality and separateness between defendants Goodrich Corporation and Hamilton Sundstrand and defendant UTC Aerospace Systems have ceased, and defendants Goodrich Corporation and Hamilton Sundstrand and defendant UTC Aerospace Systems are the alter ego of defendant UTC Aerospace Systems in that defendants Goodrich Corporation and Hamilton Sundstrand controlled and dominated the business affairs of defendant UTC Aerospace Systems. Plaintiff Earnings Statement at the time of plaintiff's termination, on or about March 11, 2014, and the subsequent month were issued on Hamilton Sundstrand's letterhead with Hamilton Sundstrand's corporate address. Plaintiff Earnings Statement the month preceding the time of plaintiff's

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

termination, on or about March 11, 2014, was issued using Goodrich's letterhead and corporate address. Plaintiff "Request For Status Change Within Bargaining Unit" was issued on Goodrich's letterhead and signed by plaintiff's supervisor Lung, an employee of defendant UTAS, on or about February 26, 2014. In 2013 and 2014, plaintiff's "Employee Change Request" forms requesting accommodations were prepared using both "Rohr, Inc., a UTC Aerospace Systems Company" and "Goodrich Aerostructures" letterheads with signatures of Human Resources Representatives and Team Leaders who at all relevant times herein were employees of defendant UTAS. Plaintiff "Separation Check-Out," providing the reason for plaintiff's termination, issued at the time of plaintiff's termination, on or about March 11, 2014, contains the "Goodrich Aerostructures" letterhead.

13.     Plaintiff does not know the true names of defendants DOES 1 through 25 and therefore sues them by those fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that each of those defendants was in some manner legally responsible for the events and happenings alleged in this complaint and for plaintiff's damages. The names, capacities, and relationships of DOES 1 through 25 will be alleged by amendment to this complaint when they are known.

14.     Plaintiff is informed and believes and on such information and belief alleges that defendants, and each of them, including defendants DOES 1 through 25, including Anderson, Arnie, Lung, and Beckstrom, at all times herein mentioned were the agents, employees, servants, joint venturers, and/or co-conspirators of the remaining defendants, and were acting in the course and scope of such agency, employment, joint venture, and/or conspiracy; that defendants, and each of them, were doing the things herein alleged, were the actual and/ or ostensible agents of the remaining defendants, and were acting within the course and scope of this agency; and that each and every defendant, as alleged, when acting as a principal, was negligent in selecting, hiring, supervising, and continuing the employment of each

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and every defendant as an agent, employee, or joint venturer; and/or that these defendants approved, supported, participated in, authorized, and/or ratified the acts and/or omissions of these employees, agents, servants, conspirators, and/or joint venturers.

15.     From June 16, 1986 to March 11, 2014, plaintiff was an "employee" of defendants within the meaning of the Family and Medical Leave Act of 1993 ("FMLA") (29 U.S.C. § 2611(3); 29 U.S.C. § 203(e)).

## JURISDICTION AND VENUE

16.     This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

17.     The claims asserted in this action arose within this district and the wrongful conduct, unlawful employment practices, and discriminatory actions alleged herein occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391.

18.     This court should exercise supplemental jurisdiction over the state claims pled herein, under 28 U.S.C. § 1367, because they are so related to the claims in the action over which this Court has original, subject matter jurisdiction, that they arise from the same case or controversy under Article III of the United States Constitution, i.e., from the same discriminatory and retaliatory instances giving rise to the federal claims.

## COMMON ALLEGATIONS

19.     At all material times herein, plaintiff was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2)(A), in that plaintiff had been regularly employed by defendant UTAS for at least 12 months and worked at least 1,250 hours during the previous 12-month period.

20.     At all material times herein, defendant UTAS has continuously been an "employer" within the meaning of the FMLA, 29 U.S.C. § 2611(4)(A), engaged in

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

interstate commerce and regularly employing more than fifty employees within seventy-five miles of plaintiff's workplace.

21. Pursuant to 29 U.S.C. § 2612(a)(1)(C) and 29 C.F.R. § 825.201, an eligible employee is entitled to FMLA leave if needed to care for the employee's parent with a serious health condition. Pursuant to 29 U.S.C. § 2612(a)(1)(C) and 29 C.F.R. § 825.201, plaintiff was entitled to FMLA leave in order to care for plaintiff's parents with serious health conditions.

22. For nearly 27 years, from June 16, 1986 through plaintiff's termination on or about March 11, 2014, plaintiff worked for defendant UTAS, and its predecessor Goodrich, in the Aerostructures Group as an Assembler, Tube Bender, and then Development Technician.

23. On or about June 16, 1986, plaintiff was hired by defendant UTAS' predecessor Goodrich and worked in its Aerostructures Group as an Assembler, Tube Bender and then Development Technician. Plaintiff was promoted to Development Technician on or about 2010/2012. On or about 2010/2012, plaintiff successfully passed the valve part test, thereby signifying a high level of mechanical aptitude and knowledge, and was chosen to work on the elite new Boeing 787 Program as a Development Technician. Shortly, thereafter, plaintiff was promoted to the title of Lead Man/Person. Plaintiff was consistently praised for his performance and recognized by plaintiff's director at the time, Harold Rhodes, as the best mechanic in the Program and as "the best of the best."

24. At the time of defendant United Technologies' acquisition of Goodrich on or about July 2012 and Goodrich's subsequent merger with Hamilton Sundstrand to form defendant UTAS, on or about 2012, and through plaintiff's termination on or about March 11, 2014, plaintiff continued to work as an employee for defendant UTAS in its Aerostructures Group as a Development Technician. At the time of the merger of defendants, on or about July 2012 (the "Merger"), plaintiff was the last

///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

remaining mechanic at the company who had worked on the Boeing 787 Program from its inception.

25.   Plaintiff is informed and believes that beginning July 2012, after the Merger and through plaintiff's termination on or about March 11, 2014, defendant UTAS used plaintiff's taking leave under the Family and Medical Leave Act ("FMLA") as a negative factor in employment actions, including plaintiff's termination on or about March 11, 2014.

26.   Plaintiff is informed and believes that beginning July 2012, after the Merger and through plaintiff's termination on or about March 11, 2014, defendant UTAS subjected plaintiff to adverse employment actions because of plaintiff's taking leave under the FMLA.

**Plaintiff's Leave Under the Family And Medical Leave Act**

27.   Beginning on or about 2009 through plaintiff's termination on or about March 11, 2014, plaintiff applied for and was granted FMLA leave for purposes of accommodating plaintiff's work schedule to provide direct care to plaintiff's parents with serious health conditions.

28.   Beginning on or about 2009 through on or about 2012, plaintiff applied for and was granted FMLA leave for purposes of accommodating plaintiff's work schedule to provide direct care to plaintiff's mother. Beginning on or about 2012, it became necessary for plaintiff to take medical leave to also provide direct care for plaintiff's father with a serious health condition. Beginning on or about 2012 through plaintiff's termination on or about March 11, 2014, plaintiff applied for and was granted FMLA leave for purposes of accommodating plaintiff's work schedule to provide direct care to both of plaintiff's parents affected by serious health conditions.

29.   From on or about 2009 through plaintiff's termination on or about March 11, 2014, plaintiff renewed his application for FMLA leave each calendar year. For each FMLA leave accommodation request, plaintiff gave defendants, including

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

defendant UTAS after the Merger, appropriate notice of his need to be absent from work.

30.     From on or about 2009 through plaintiff's termination on or about March 11, 2014, plaintiff was approved under FMLA leave for an accommodated work schedule that permitted him to perform all of his duties as Development Technician and to provide direct care to plaintiff's parents with serious health conditions. Throughout plaintiff's employment, plaintiff submitted to defendants, including defendant UTAS after the Merger, "Employee Change Request" forms requesting transfers in shifts and/or departments for purposes of accommodating plaintiff's schedule to care for his parents with serious health conditions.

31.     From 2009 through July 2012, plaintiff was accommodated with flexibility in his schedule, such as the ability to arrive later to work. During this period, plaintiff submitted "Employee Change Request" forms requesting a transfer from first shift (6:30 a.m. to 3:00 p.m.) to second shift (3:30 p.m. to 11:30 p.m.) to care for his parents with serious health conditions. During this period, plaintiff's supervisors accommodated plaintiff's FMLA leave requests by assigning plaintiff for second shift and permitting flexibility in his schedule.

### Defendants' Interference with Plaintiff's FMLA Rights

32.     Plaintiff is informed and believes that after on or about July 2012, at the time of the Merger, and through plaintiff's termination on or about March 11, 2014, defendant UTAS denied, ignored, or intentionally delayed approval of plaintiff's requests for an accommodated work schedule, including transfer in shifts and/or departments, that permitted him to perform all of his duties as Development Technician and to provide direct care to plaintiff's parents with serious health conditions.

33.     Defendant UTAS considered plaintiff's FMLA leave as a negative factor in in its decision to terminate him.

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

34.     Defendant UTAS failed to assist plaintiff with tracking his FMLA leave. During plaintiff's last year of employment, plaintiff had six supervisors and only one of plaintiff's supervisors assisted him with tracking his FMLA leave.

35.     After on or about July 2012, the time of the merger of defendants, defendant UTAS was aware that plaintiff was assigned second shift, that plaintiff was granted FMLA leave to care for his parents, and that a first shift assignment posed a financial burden for plaintiff. After the merger, plaintiff was assigned new supervisors and despite knowledge of plaintiff's FMLA leave accommodation needs, plaintiff's new supervisors, acting on behalf of defendant UTAS, placed plaintiff on first shift which interfered with plaintiff's ability to perform all of his duties as Development Technician and to provide direct care to plaintiff's parents with serious health conditions.

36.     On or about October 2013, plaintiff again submitted an "Employee Change Request" form requesting that plaintiff be transferred from first shift to second shift to care for his parents with serious health conditions. Plaintiff's "Employee Change Request" form submitted to defendant UTAS in October 2013 was "lost" by plaintiff's supervisor at the time. Defendant UTAS failed to notify plaintiff about the approval status of plaintiff's "Employee Change Request" form submitted to defendant in October 2013.

37.     On or about February 2014, plaintiff was moved to a new department and under the supervision of supervisor Ken Lung, plaintiff was assigned the menial duty of dusting shelves and was told by Lung that the department did not have second shift available for plaintiff and did not have any work for plaintiff but dusting shelves. On several occasions, Lung would tell plaintiff to go "take care of your FMLA stuff," direct him to continue dusting shelves, exhibited a negative attitude towards plaintiff, and intentionally hide or avoid interacting with plaintiff.

38.     On or about February 2014, plaintiff submitted an "Employee Change Request" form to plaintiff's new supervisor Lung requesting that plaintiff be

**10**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

transferred from first shift to second shift in another department to care for his parents with serious health conditions. The transfer request was approved and signed by plaintiff's new supervisor Lung. Lung then told plaintiff to continue dusting shelves.

39.     On or about February 2014, manager Dave McCarty ("McCarty"), of a different department, offered plaintiff an open spot on second shift in his department. McCarty told plaintiff's current supervisor, Lung, that he wanted plaintiff to transfer to his department to perform the duties of Development Technician. In response, Lung verbally approved McCarty's request for plaintiff to submit an "Employee Change Request" form to Human Resources requesting that plaintiff be transferred to second shift in McCarty's department. Lung then told plaintiff to continue dusting shelves. Plaintiff then walked with McCarty to the office of Arnie, the Human Resources Personnel Control representative for defendant, and met with Arnie to submit the transfer request.

40.     On or about March 3, 2014, Lung told plaintiff to meet with Arnie with Human Resources due to a question about plaintiff's request for transfer and stated that if he wanted to transfer, he would need to take a pay cut. Plaintiff met with Arnie and Lung and agreed to the pay cut. After which, Arnie had plaintiff initial and approve the transfer request with a pay cut.

41.     After approving plaintiff's request for transfer with a pay cut, Defendant UTAS retracted its approval of plaintiff's "Employee Change Request" form on or about March 11, 2014.

42.     Plaintiff's taking of FMLA-protected leave constituted a negative factor in defendant's decision to terminate him. At plaintiff's termination, plaintiff was subjected to discriminatory actions and comments on the basis of plaintiff's FMLA leave by the actions and comments of defendant UTAS Human Resources Manager Nevia Anderson and defendant UTAS Human Resources Personnel Control representative Arnie.

///

**11**

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

43.     On or about March 11, 2014, defendants, acting through defendant UTAS Human Resources Manager Anderson and defendant UTAS Human Resources Personnel Control representative Arnie, arranged a meeting with plaintiff and plaintiff's supervisor and union representative during which plaintiff was questioned and falsely accused of missing workdays with the intention of terminating his employment, denied accommodations under the FMLA, accused of not having FMLA leave, and plaintiff's employment was terminated.

44.     On or about March 11, 2014, defendant UTAS Human Resources Manager Anderson and defendant UTAS Human Resources Personnel Control representative Arnie, directed for plaintiff to attend two separate meetings on the same day. Anderson and Arnie deliberately failed to inform plaintiff the reason for the meetings, that other persons besides plaintiff would be in attendance, and the identity of the other attendees in an effort to deprive plaintiff of his FMLA leave rights by falsely claiming plaintiff was absent from work when plaintiff was actually at work on the days identified by Anderson and Arnie.

45.     On or about March 11, 2014 morning, defendant UTAS Human Resources Manager Anderson and defendant UTAS Human Resources Personnel Control Arnie, directed for plaintiff to attend a meeting that same morning. When plaintiff arrived at the meeting with defendant UTAS' Human Resources Representatives as directed, plaintiff discovered that plaintiff's former supervisor and former manager were also invited to and present at the meeting with Anderson and Arnie. During the meeting, plaintiff's former supervisor and former manager stated to Anderson and Arnie that they did not know why they were called into this meeting. Anderson then stated to plaintiff that the meeting was being rescheduled to 2:00 p.m. that same day and directed for plaintiff to attend.

46.     On that same day, on or about March 11, 2014 at 2:00 p.m., plaintiff attended the second meeting with Anderson and Arnie as directed by Anderson and Arnie on behalf of defendant UTAS. When plaintiff arrived at the meeting with

defendant UTAS' Human Resources Representatives as directed, plaintiff discovered that plaintiff's current supervisor at the time, Lung, and the union representative for plaintiff's union were also invited to and present at the second meeting with defendant UTAS' Human Resources Representatives. However, plaintiff's former supervisor and former manager were not present at this meeting.

47.     At the second meeting, on or about March 11, 2014 at 2:00 p.m., defendant Human Resources Manager Anderson, acting on behalf of defendant UTAS, stated to plaintiff that plaintiff's request for transfer to second shift was being denied because plaintiff had missed too much time at work. Anderson's statement that plaintiff had missed too much time at work was false. During this meeting, Anderson also falsely stated to plaintiff and plaintiff's present supervisor and union representative that plaintiff did not have FMLA leave.

48.     Plaintiff then informed Anderson that plaintiff had FMLA leave coverage for both parents. In response, Anderson falsely claimed to plaintiff and plaintiff's present supervisor and union representative that plaintiff had missed three days of work when defendant UTAS, acting through Anderson and its other managing agents, knew that plaintiff was actually at work on the days identified by Anderson and plaintiff had never missed a day of work with no call in while employed for defendant UTAS.

49.     At the second meeting, on or about March 11, 2014 at 2:00 p.m., Anderson stated to plaintiff and plaintiff's present supervisor and union representative that plaintiff had a no call in for three days. Anderson then identified the three dates for which Anderson claimed plaintiff had a no call in. In response, plaintiff explained to Anderson that plaintiff was actually at work on the days identified by Anderson and plaintiff has never missed a day of work, and provided Anderson with documentation indicating that plaintiff was at work on the days identified by Anderson.

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

50.     Upon plaintiff's documentation indicating that plaintiff was at work on the days claimed as missed, Anderson then represented to plaintiff and plaintiff's present supervisor and union representative that plaintiff's no call in was for a different set of three days than those initially represented by Anderson only minutes prior. One of the dates identified by Anderson was a date that fell on the weekend. Plaintiff's position did not require plaintiff to work on weekends. In response, plaintiff explained to Anderson that plaintiff was actually at work on this set of days identified by Anderson, that one of the dates identified was on the weekend, and that plaintiff had never missed a day of work. Plaintiff also provided Anderson with documentation indicating that plaintiff was at work on the days identified by Anderson

51.     Immediately thereafter, Anderson terminated plaintiff on the spot in front of plaintiff's present supervisor and union representative without explanation.

52.     Anderson then demanded that plaintiff turn plaintiff's badge and official professional stamp in to her immediately. Anderson told plaintiff: "Give me your badge and stamp." Anderson then stated to plaintiff's present supervisor and union representative that they needed to walk plaintiff "straight out right now." Anderson stated that plaintiff was not permitted to stop anywhere on the company premises and was to be escorted out immediately.

53.     Anderson refused to allow plaintiff to stop at the union office with his union representative despite plaintiff's union representative's request to stop at the union with plaintiff. In response to the request, Anderson stated: "No. You have to walk straight out."

54.     After terminating plaintiff, on or about March 11, 2014, defendants falsely reported in plaintiff's "Separation Check-Out" that plaintiff's termination of employment was due to violation of company policy. Plaintiff's "Separation Check-Out" stated that plaintiff's last day of work is March 11, 2014. plaintiff's "Separation ///

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Check-Out" was issued on defendant Goodrich's letterhead and entered, dated, and signed on or about March 11, 2014 by defendant UTAS' employee.

55.     In addition to the aforementioned conduct, plaintiff's taking of FMLA-protected leave constituted a negative factor in defendant UTAS' decision in other employment actions.

56.     After on or about July 2012, the time of the merger of defendants, defendant UTAS demoted plaintiff from the title of lead man and replaced plaintiff with an employee who was less skilled, knowledgeable, and experienced than plaintiff.

57.     Towards the end of plaintiff's employment, defendant UTAS denied plaintiff brand new tools provided to other similarly situated employees, which made it extremely difficult, if not impossible, to do plaintiff's job as Development Technician.

58.     Beginning on or about July 2012, the time of the merger of defendants, and through plaintiff's termination on or about March 11, 2014, defendant UTAS gave plaintiff, adverse job assignments, drastically reduced plaintiff's job responsibilities and duties, and reassigned plaintiff to menial or degrading work, including dusting shelves, and tasks that duplicated other employees' efforts and were not commiserate with plaintiff's experience, knowledge and skills. Defendant UTAS denied plaintiff assignment of duties and responsibilities given to other similarly situated employees who were less skilled, knowledgeable, and experienced than plaintiff. Defendant UTAS transferred plaintiff's job responsibilities and duties employees who were less skilled, knowledgeable, and experienced than plaintiff, making it necessary for plaintiff to fix mistakes of other similarly situated employees in carrying out these duties and responsibilities.

59.     Beginning on or about July 2012, the time of the merger of defendants, and through plaintiff's termination on or about March 11, 2014, defendant UTAS denied plaintiff promotions and raises provided to similarly situated employees who

were less skilled, knowledgeable, and experienced than plaintiff, including refusing to promote plaintiff to supervisor, promoting other similarly situated employees who were less skilled, knowledgeable, and experienced than plaintiff to supervisor positions, and assigning plaintiff to nine different supervisors with less skill, knowledge, and experience than plaintiff over the span of one year and eight months. When plaintiff asked for a promotion to lead man or supervisor, defendant UTAS denied plaintiff a promotion.

60.     Plaintiff was part of a homecare giver union. Plaintiff's coworkers would often approach plaintiff for guidance and information on FMLA leave. Plaintiff is informed and believes that beginning on or about July 2012, the time of the merger of defendants, and through plaintiff's termination on or about March 11, 2014, defendant UTAS encouraged coworkers to not speak with plaintiff or seek information on FMLA from plaintiff. Beginning after the merger of defendants, plaintiff was shunned daily by both management, supervisors, and coworkers. Plaintiff's coworkers stopped asking plaintiff questions about FMLA leave. At least once a day, plaintiff's supervisors, including Lung, management, and coworkers would avoid plaintiff or ignore plaintiff. On several occasions, when an employee would ask plaintiff about FMLA leave, upon seeing a member of defendant UTAS' management team, the employee would away from plaintiff.

61.     Management for defendant UTAS made unwelcoming remarks directed towards plaintiff, such as comments to plaintiff about plaintiff's taking FMLA leave in a negative manner, including by plaintiff's supervisor Lung, and plaintiff's supervisor Glover yelling at plaintiff to get off and hang up the phone during a call plaintiff received regarding an emergency related to plaintiff's parents.

62.     Management for defendant UTAS ignored complaints from plaintiff regarding unwelcoming remarks directed towards plaintiff from other employees for defendant UTAS, such as Glover dismissing plaintiff's complaints to Glover regarding comments about plaintiff's taking FMLA leave in a negative manner,

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

including a comment by plaintiff's lead person on or about August/September 2012 to plaintiff stating "don't think you can just leave when you to, we are here to work," "if you are not here, you do not get paid" and that plaintiff was the reason the company was losing money.

63.      Management for defendant UTAS, including plaintiff's supervisor Lung, isolated, ostracized and alienated plaintiff from other employees in the department by assigning plaintiff tasks that separated and physically distanced plaintiff from interaction with other similarly situated employees, such as assigning plaintiff menial tasks, including dusting shelves, in areas of the work premises located away from that of plaintiff's peers.

64.      Defendants' discriminatory actions against plaintiff constituted unlawful interference in employment with an employee's right to take unpaid leave from work under the Family and Medical Leave Act, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.

65.      Defendants' discriminatory actions against plaintiff constituted unlawful discrimination in employment on account of an employee's exercise of his or her right to take unpaid leave from work under the Family and Medical Leave Act, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq.

## FIRST CAUSE OF ACTION

### (Interference With Right to Take Leave in Violation of Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., Against All defendants)

66.      The allegations set forth in paragraphs 1 through 65 are realleged and incorporated herein by reference.

67.      Plaintiff's taking of FMLA-protected leave constituted a negative factor in defendant UTAS' decision in terminating plaintiff and other employment actions.

68.      The Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2615(a)(1), makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

69.    At all material times herein, FMLA was in effect and pursuant to 29 U.S.C. § 2611(4)(A)(ii)(I) imposed liability on covered employers and "any person who acts directly or indirectly in the interest of the employer to any of the employees of such employer" for interfering, restraining, or denying the exercise of, or attempt to exercise, any right provided under FMLA pursuant to 29 U.S.C. § 2615(a)

70.    The FMLA, 29 U.S.C. § 2615(a)(2), also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."

71.    Defendant UTAS interfered, restrained, or denied the exercise of, or attempt to exercise, plaintiff's rights under FMLA.

72.    Plaintiff is informed and believes, and on that basis alleges, that there was an "entitlement to leave" as defined in the FMLA, 29 U.S.C. § 2612(a)(1), and that plaintiff was denied his entitlement to leave as prescribed in FMLA.

73.    Defendant UTAS interfered with the exercise of plaintiff's right to unpaid leave in that defendant UTAS denied plaintiff benefits plaintiff was entitled to under the FMLA by terminating plaintiff's employment.

74.    Beginning July 2012, after the merger of defendants, and through plaintiff's termination on or about March 11, 2014, defendant UTAS' interference, restraint, or denial of the exercise of, or attempt to exercise plaintiff's rights under FMLA included interference with and denial of plaintiff's right to benefits plaintiff was entitled to under the FMLA, including denying plaintiff's "Employee Change Request" forms requesting transfer in shifts and/or departments to care for his parents with serious health conditions, losing plaintiff's "Employee Change Request" forms, intentionally delaying approval of plaintiff's "Employee Change Request" forms, denying plaintiff's right to a medically necessary reduced work schedule, denying plaintiff's right to FMLA, unjustified notice of defendant UTAS' intent not to reinstate plaintiff to his former or comparable position, unjustified refusal to reinstate

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

plaintiff to his former or comparable position, and ordering plaintiff not to take FMLA leave.

75.     As a proximate result of plaintiff's taking of FMLA leave, defendants denied plaintiff benefits plaintiff was entitled to under the FMLA. As a proximate result of plaintiff's taking of FMLA leave, on or about March 11, 2014, defendants arranged a meeting with plaintiff and plaintiff's supervisor and union representative during which plaintiff was questioned and falsely accused of missing workdays with the intention of terminating his employment and terminated plaintiff's employment on March 11, 2014 at this meeting.

76.     Defendants, and its agents and supervisors, failed to prevent interference, restraint, or denial of the exercise of, or attempt to exercise plaintiff's rights under FMLA.

77.     After terminating plaintiff, on or about March 11, 2014, defendants falsely reported in plaintiff's "Separation Check-Out" that plaintiff's termination of employment was due to violation of company policy. Plaintiff's "Separation Check-Out" was issued on defendant Goodrich's letterhead and entered, dated, and signed by an employee of defendant UTAS. Per the statements in Plaintiff's "Separation Check-Out," defendant Hamilton Sundstrand issued plaintiff his final paycheck.

78.     Defendants' discriminatory actions against plaintiff constituted unlawful interference in employment with an employee's right to take unpaid leave from work under the Family and Medical Leave Act, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., and has resulted in damage and injury to plaintiff as alleged herein.

79.     As a proximate result of defendants' discriminatory actions, as alleged above, plaintiff has been harmed in that plaintiff has suffered the loss of the wages, salary, benefits, and additional amounts of money plaintiff would have received if plaintiff had not been terminated by defendant UTAS, including retirement benefits.

///

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof.

80.     As a further proximate result of defendants' discriminatory actions, as alleged above, plaintiff has been harmed in that plaintiff has suffered the intangible loss of such employment-related opportunities as experience in the position held by plaintiff. As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof.

81.     No adequate remedy exists at law for the injuries suffered by plaintiff herein, insofar as the employment opportunity that defendants have denied to plaintiff cannot be secured absent injunctive relief. If this court does not grant injunctive relief of the type and for the purpose specified below, plaintiff will suffer irreparable injury. Therefore, plaintiff requests the following injunctive relief: reinstatement in plaintiff's former position.

82.     Pursuant to 29 U.S.C. §2617(1)(A)(i)(I), Plaintiff is entitled to any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation.

83.     Pursuant to 29 U.S.C. §2617(1)(A)(ii), plaintiff requests that the court award plaintiff interest on the amount of all wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation amount, calculated at the prevailing rate.

84.     Pursuant to 29 U.S.C. §2617(1)(A)(iii), plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the amount described in wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation and the interest on this amount.

85.     Pursuant to 29 U.S.C. §2617(1)(B), plaintiff is entitled such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

86.     Pursuant to Pursuant to 29 U.S.C. §2617(3), plaintiff is entitled to reasonable attorney's reasonable attorney's fee, reasonable expert witness fees, and

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

other costs of the action. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## SECOND CAUSE OF ACTION

**(Discrimination in Violation of Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., Against All defendants)**

87.     The allegations set forth in paragraphs 1 through 86 are realleged and incorporated herein by reference.

88.     Plaintiff was discriminated against for exercising the right to unpaid leave under the FMLA.

89.     Plaintiff was subject to an adverse employment action because of plaintiff's taking leave under the Family and Medical Leave Act. At all times herein mentioned, plaintiff was qualified for the position of Development Technician for defendant UTAS in that plaintiff was consistently praised for his performance, recognized as a top employee, and was the only mechanic left at the company who worked on the Boeing 787 program from its inception. On or about March 11, 2014, after a significant period of wholly satisfactory, competent, and diligent performance to the profit of the defendant, plaintiff was notified by defendant UTAS that his employment was being terminated because of a claim that plaintiff had missed three workdays. defendant UTAS' claim that plaintiff was being terminated because plaintiff had a no call in for three days, however, was a pretext designed to conceal defendant UTAS' practice of discriminating against plaintiff on the basis of his exercising the right to unpaid leave under the Family and Medical Leave Act.

90.     Defendants stated that plaintiff's termination of employment was due to violation of company policy. This reason is a pretext for discrimination on account of plaintiff's FMLA leave, in that inconsistent explanations were provided by defendants for the termination decision; others similarly situated to plaintiff were not

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

terminated; and statements of hostility or bias were made toward plaintiff. Defendant UTAS improperly denied plaintiff accommodations under the FMLA leave based on a trivial action and used that purported violation of company policy as pretext for firing him. Defendant UTAS treated plaintiff less favorably because he was on leave. Plaintiff was at work on the days identified by defendant UTAS as plaintiff had never missed a day of work and provided defendant UTAS with documentation substantiating plaintiff's perfect attendance. Other employees with tardiness were not disciplined or terminated.

91.     Plaintiff's exercise of his rights under FMLA was a determinative factor in defendants' adverse treatment of plaintiff. Beginning July 2012, after the merger of defendants, and through plaintiff's termination on or about March 11, 2014, defendant UTAS subjected plaintiff to the adverse employment actions set forth in Paragraphs 92 through 115, 117, and 118, because of plaintiff's taking leave under the Family and Medical Leave Act.

92.     Denial of benefits plaintiff was entitled to under the FMLA, including denying plaintiff's "Employee Change Request" forms requesting transfer in shifts and/or departments to care for his parents with serious health conditions, losing plaintiff's "Employee Change Request" forms, intentionally delaying approval of plaintiff's "Employee Change Request" forms, denying plaintiff's right to a medically necessary reduced work schedule, denying plaintiff's right to FMLA, unjustified notice of defendants' intent not to reinstate plaintiff to his former or comparable position on his return from leave, unjustified refusal to reinstate plaintiff to his former or comparable position on his return from leave; and ordering plaintiff not to take FMLA leave;

93.     Refusal to assist plaintiff with accommodations under the FMLA;

94.     Denial of benefits afforded other similarly situated employees, including promotions, raises, retirement package, and reimbursements for mandatory travel expenses;

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

95.     Denial of the same tools provided to other similarly situated employees, such as brand new tools, making it extremely difficult, if not impossible, to do plaintiff's job;

96.     Adverse job assignments and reassignment to menial or degrading work, including dusting shelves;

97.     Assigning plaintiff menial tasks that duplicated other employees' efforts and were not commiserate with plaintiff's experience, knowledge and skills;

98.     Reassignment to work under younger supervisors with less experience, knowledge, and skills;

99.     Reduction in job responsibilities and transfer of job duties, including denying plaintiff assignment of duties and responsibilities given to other similarly situated employees who were less skilled, knowledgeable, and experienced than plaintiff, making it necessary for plaintiff to fix mistakes of other similarly situated employees in carrying out these duties and responsibilities;

100.    Demotion from lead man title;

101.    Refusing to reinstate plaintiff to his former duties and responsibilities as lead man;

102.    Refusing to promote plaintiff to supervisor, including promoting other similarly situated employees who were less skilled, knowledgeable, and experienced than plaintiff to supervisor positions and assigning plaintiff to nine different supervisors with less skill, knowledge, and experience than plaintiff over the span of one year and eight months;

103.    Issuing discriminatory work instructions;

104.    Daily shunning by supervisors and isolating plaintiff from the department;

105.    Unjustified negative evaluation and criticism of plaintiff's work performance;

106.    Terminating plaintiff;

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

107.    Forbidding coworkers from speaking with plaintiff and seeking information on FMLA leave from plaintiff;

108.    Commenting and joking about plaintiff taking FMLA leave in a discriminatory manner;

109.    Falsely reporting in plaintiff's "Separation Check-Out" that plaintiff was terminated for violation of company policy

110.    Falsely stating at a meeting with plaintiff and plaintiff's former and present supervisors and managers, and union representative, that plaintiff missed three days of work when plaintiff was at work on those days;

111.    Management issuing demand at meeting with plaintiff and plaintiff's former and present supervisors and managers, and union representative that plaintiff surrender plaintiff's badge and stamp, immediately leave the work premises, and restricting plaintiff from stopping at union office or plaintiff's workstation;

112.    Management remarks at meeting with plaintiff and plaintiff's former and present supervisors and managers, and union representative falsely denying plaintiff's grant of FMLA leave;

113.    Management demanding plaintiff immediately leave the work premises; and

114.    Unjustified negative evaluation in plaintiff's personnel file.

115.    Defendants, and its agents and supervisors, failed to prevent discrimination and discharge of plaintiff because of FMLA leave.

116.    As a proximate result of plaintiff's taking of FMLA leave, defendants subjected plaintiff to the foregoing employment actions.

117.    As a proximate result of plaintiff's taking of FMLA leave, on or about March 11, 2014, defendants arranged a meeting with plaintiff and plaintiff's supervisor and union representative during which plaintiff was questioned and falsely accused of missing workdays with the intention of terminating his employment and terminated plaintiff's employment on March 11, 2014 at this meeting.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

118.     After terminating plaintiff, on or about March 11, 2014, defendants falsely reported in plaintiff's "Separation Check-Out" that plaintiff's termination of employment was due to violation of company policy. Plaintiff's "Separation Check-Out" was issued on defendant Goodrich's letterhead and entered, dated, and signed by an employee of defendant UTAS. Per the statements in Plaintiff's "Separation Check-Out," defendant Hamilton Sundstrand issued plaintiff his final paycheck.

119.     Defendants' discriminatory actions against plaintiff constituted unlawful discrimination in employment on account of an employee's exercise of his or her right to take unpaid leave from work under the Family and Medical Leave Act, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., and has resulted in damage and injury to plaintiff as alleged herein.

120.     As a proximate result of defendants' discriminatory actions, as alleged above, plaintiff has been harmed in that plaintiff has suffered the loss of the wages, salary, benefits, and additional amounts of money plaintiff would have received if plaintiff had not been terminated by defendant UTAS, including retirement benefits. As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof.

121.     As a further proximate result of defendants' discriminatory actions, as alleged above, plaintiff has been harmed in that plaintiff has suffered the intangible loss of such employment-related opportunities as experience in the position held by plaintiff. As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof.

122.     No adequate remedy exists at law for the injuries suffered by plaintiff herein, insofar as the employment opportunity that defendants have denied to plaintiff cannot be secured absent injunctive relief. If this court does not grant injunctive relief of the type and for the purpose specified below, plaintiff will suffer irreparable injury. Therefore, plaintiff requests the following injunctive relief: reinstatement in plaintiff's former position.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

123.     Pursuant to 29 U.S.C. §2617(1)(A)(i)(I), Plaintiff is entitled to any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation.

124.     Pursuant to 29 U.S.C. §2617(1)(A)(ii), plaintiff requests that the court award plaintiff interest on the amount of all wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation amount, calculated at the prevailing rate.

125.     Pursuant to 29 U.S.C. §2617(1)(A)(iii), plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the amount described in wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation and the interest on this amount.

126.     Pursuant to 29 U.S.C. §2617(1)(B), plaintiff is entitled such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

127.     Pursuant to Pursuant to 29 U.S.C. §2617(3), plaintiff is entitled to reasonable attorney's reasonable attorney's fee, reasonable expert witness fees, and other costs of the action. Plaintiff has incurred and continues to incur legal expenses and attorney fees. Plaintiff is presently unaware of the precise amount of these expenses and fees and prays leave of court to amend this complaint when the amounts are more fully known.

## THIRD CAUSE OF ACTION

### (Failure to Provide Reimbursements For Expenses In Violation of California Labor Code §§ 2800 and 2802 against Defendant UTAS)

128.     The allegations set forth in paragraphs 1 through 127 are realleged and incorporated herein by reference.

129.     California Labor Code § 2800 requires an employer to "indemnify his employee for losses caused by the employer's want of ordinary care." California Labor Code § 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

the discharge of his or her duties, or of his or her obedience to the directions of the employer."

130.     Plaintiff incurred necessary business-related expenses in January 2013 and February 2014 that were not reimbursed.

131.     Plaintiff was required by Defendant UTAS to take two business trips as part of his job duties and was not reimbursed for his travel expenses. Defendant UTAS failed to reimburse plaintiff for these expenses.

132.     Defendant UTAS owes plaintiff a total of approximately $3,000 for expenses and costs that were not reimbursed to plaintiff.

133.     Pursuant to Labor Code §§ 2800 and 2802, plaintiff is entitled to approximately $3,000 for unreimbursed expenses incurred in in direct consequence of the discharge of his duties, or of his obedience to the directions of defendant UTAS.

134.     Pursuant to Labor Code § 2802, subd. (b), plaintiff is entitled to interest, and reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### (Unlawful Deductions From Wages In Violation of Labor Code §§ 201 and 221 Against Defendant UTAS)

135.     The allegations set forth in paragraphs 1 through 134 are realleged and incorporated herein by reference.

136.     At the time of termination, defendant UTAS failed to pay to plaintiff the wages that plaintiff had earned and that were then due.

137.     California Labor Code § 221 provides: "It shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."

138.     Defendant UTAS violated California Labor Code § 221 by unlawfully taking deductions from plaintiff's compensation to cover certain ordinary business expenses for defendant UTC, including two business trips plaintiff was required to take as part of his job duties.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

139.     Defendant UTAS' unlawful deductions and failure to pay the full amount due plaintiff on violates the provisions of California Labor Code §§ 221 and 201. There is now due and owing to plaintiff the sum of approximately $3,000. Defendants have failed and refused, and continue to fail and refuse, to pay the amount due.

140.     Pursuant to Labor Code section 218.5, plaintiff requests that the court award plaintiff reasonable attorney's fees and costs incurred by him in this action.

141.     Pursuant to Labor Code section 218.6, plaintiff requests that the court award plaintiff interest on all due and unpaid wages, at the legal rate specified by Civil Code section 3289, subdivision (b), accruing from the date the wages were due and payable.

## PRAYER

WHEREFORE plaintiff prays judgment against all defendants as follows:

**AS FOR THE FIRST AND SECOND CAUSES OF ACTION**

1.     For back pay, front pay, and other monetary relief according to proof, including any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation, pursuant to 29 U.S.C. §2617(1)(A)(i)(I);

2.     For interest on the sum of damages awarded calculated at the prevailing rate pursuant to 29 U.S.C. §2617(1)(A)(ii);

3.     For liquidated damages equal to the sum of the amount described in wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation and the interest on this amount pursuant to 29 U.S.C. §2617(1)(A)(iii);

5.     For equitable relief in the form of employment, reinstatement, and promotion pursuant to 29 U.S.C. §2617(1)(B);

6.     For reasonable attorney's fees, reasonable expert witness fees, and other costs of the action pursuant to 29 U.S.C. §2617(3).

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

WHEREFORE plaintiff prays judgment against defendant UTAS as follows:

**AS FOR THE THIRD AND FOURTH CAUSES OF ACTION**

1.     For compensatory damages in the amount of approximately $3,000, representing unreimbursed expenses owed to plaintiff on March 11, 2014;

2.     For interest on the amount of approximately $3,000 from March 11, 2014 pursuant to Labor Code § 2802, subd. (b);

3.     For compensatory damages in the amount of approximately $3,000 representing unpaid wages owed to plaintiff on March 11, 2014;

4.     For interest on the amount of approximately $3,000 from March 11, 2014 pursuant to Labor Code section 218.6, at the legal rate specified by Civil Code section 3289, subdivision (b),;

5.     For reasonable attorney's fees pursuant to Labor Code Sections 218.6 and Labor Code § 2802, subd. (b);

6.     For costs incurred herein pursuant to Labor Code Sections 218.6 and Labor Code § 2802, subd. (b).

**JURY DEMAND**

Plaintiff demands a trial by jury as to each claim herein.

DATED: December 16, 2015          OLINS RIVIERE COATES & BAGULA, LLP


By: s/Rada Feldman
Mark S. Bagula, Esq.,
Rada Feldman, Esq.,
Email: feldman@orcblawfirm.com
Attorneys for Plaintiff, WILLIAM
GUTIERREZ

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**